Argued and submitted April 30, reversed and remanded December 16, 1998

## STATE OF OREGON,
*Appellant,*

*v.*

## VIRGIL ALLEN RAY,
*Respondent.*

(96-2858-C; CA A97771)

971 P2d 490

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. On the brief were Hardy Myers, Attorney General, Virginia L. Linder, Solicitor General, and David B. Thompson, Assistant Attorney General.

Hari Nam S. Khalsa, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Before De Muniz, Presiding Judge, and Deits, Chief Judge, and Haselton, Judge.

DEITS, C. J.

## DEITS, C. J.

Defendant is charged with second-degree theft, ORS 164.045, based on the alleged unauthorized signing of a credit charge for merchandise at a hardware store. The state seeks reversal of a pretrial order suppressing evidence of "any identification of the defendant which occurred while the officer and the identifying witness were both present at defendant's residence, as well as any subsequent in-court identification * * *." We reverse.

In July 1996, Robert Varley, who had an open account at Talent Ace Hardware, discovered that an unauthorized charge had been made on his account by someone named "James." He went to the store and showed the receipt to Todd, a sales clerk. Todd said that he remembered the man who signed the charge and the conversation that they had at that time but that he could not remember the man's name. Todd described the person as "middle aged, dark brown hair, big, stocky kind of guy." He said that he talked to the person about the project for which the items were being purchased. He also told Varley that the man had signed on the account several times in the past. Varley and Todd then went to Varley's house to see if any of the men working there was the person that Todd had in mind. Todd said that none of the men there was the man who had signed the charge. After hearing Todd's description, Varley's wife suggested that it could be defendant, who was a former tenant of the Varleys. Varley and Todd then went to defendant's house. Varley angrily accused defendant of making the unauthorized charge, after which Todd identified defendant as the man who had signed the charge. Varley and Todd later returned to defendant's house with Talent Police Officer Rose, who, after asking defendant's permission, searched defendant's house and property. After finding some items that matched those on the unauthorized charge, Rose asked Todd if defendant was the person who signed the charge, and Todd again said that he was.

As noted above, defendant filed a pretrial motion to suppress "any and all objects, information, statements and observations obtained by and resulting from the witness

identification of the defendant, on July 7, 1996, at defendant's residence. * * *" The trial court concluded that the initial identification of defendant by Todd was not subject to suppression because it did not involve "state action." However, the court suppressed all subsequent identifications, explaining:

> "Although the initial identification is not subject to suppression because it involved no state action, the suggestive process of the initial identification coupled with the suggestive nature of what occurred when the identifying witness went to defendant's home with the police officer, taints any further identification of the defendant by the identifying witness. The Court finds that any in-court identification would inevitably be based in large part on these prior overly suggestive processes. The State has failed to establish that any subsequent identification was or would be reliable."

■ On appeal, the state assigns error to the trial court's allowance of the motion to suppress. We review the trial court's ruling suppressing the identification for errors of law. *See State v. Davie*, 56 Or App 507, 642 P2d 680, *rev den* 293 Or 146 (1982).

The test for the admissibility of identification evidence was articulated by the Oregon Supreme Court's decision in *State v. Classen,* 285 Or 221, 232, 590 P2d 1198 (1979):

> "First, the court must determine whether the process leading to the offered identification was suggestive or needlessly departed from procedures prescribed to avoid such suggestiveness. If so, then the prosecution must satisfy the court that the proffered identification has a source independent of the suggestive confrontation or photographic display, or that other aspects of the identification at the time it was made substantially exclude the risk that it resulted from the suggestive procedure." (Internal footnote, citation and quotation marks omitted.)

It is questionable whether *Classen* would be applicable in any respect to the initial identification, because that identification did not involve police procedures. We need not decide that here, however, because we conclude that none of the identification evidence should have been suppressed.

The state does not contest the suggestiveness of either the first or second out-of-court identification of defendant. Accordingly, the critical question here is whether the identification had "a source independent of the suggestive confrontation." *Id.* If so, then the reliability and probativeness of the identification evidence are questions for the jury. In *Classen,* the court identified the relevant factors in determining when there was an independent source of reliability as: The opportunity that the witness had to get a clear view of the person, the timing and completeness of the description given by the witness after the event, the certainty expressed by the witness in the description and in making the subsequent identification, the lapse of time between the original observation and the subsequent identification, and the age and sensory acuity of the witness. *Id.* at 232-33.

After considering the relevant factors, we conclude that Todd's identification of defendant did have a source independent of the suggestive confrontation. Todd had made sales to defendant over a period of approximately three years. He had seen him in the company of Varley, both at the hardware store and at Varley's home. Upon being shown the charge slip, Todd immediately said he knew who the signor was although he could not recall his name. Todd not only recalled who had signed the slip but remembered their conversation at the time of the sale. Todd had ample opportunity to view defendant and to determine that he knew him from past encounters. Todd excluded the first four men that he was shown and then confirmed that defendant was the person who had made the transaction. Considering the totality of the circumstances, we find that Todd possessed "knowledge of and the ability to reconstruct the prior criminal occurrence and to identify the defendant from [his] observations of him at the time of the crime." *Davie,* 56 Or App at 515-16 (citing *United States v. Crews,* 445 US [463, 471, 100 S Ct 1244, 63 L Ed 2d 537 (1980)]). Given Todd's familiarity with defendant, there was little likelihood of misidentification in this case. We conclude that the trial court erred in suppressing the identification evidence.

Reversed and remanded.